

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**JAMES A. VARNELL  and
MICHELLE  VARNELL**                                                           **PLAINTIFFS**


**vs.**                                     CIVIL ACTION NO.: 1.07cv 799LTSRHW

**STATE FARM FIRE AND CASUALTY COMPANY,
STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, and JOHN DOES
1 THROUGH 10**                                                        **DEFENDANTS**

<u>**COMPLAINT**</u>
<u>**JURY TRIAL REQUESTED**</u>

 COME NOW, James A. Varnell  and Michelle  Varnell  ("Plaintiffs"), by and through

counsel, and file this Complaint against Defendants State Farm Fire and Casualty Company,

State Farm Mutual Automobile Insurance Company (collectively "State Farm"), and John Does 1

through 10 and allege as follows:

<u>**PREAMBLE**</u>

 The Plaintiffs in this case are State Farm policyholders, who were wrongfully denied

insurance benefits following Hurricane Katrina.

 Today another case is being filed in this Court styled *Glenda Shows, et al. v. State Farm*

*Mutual Automobile Insurance Company, et al.*, on behalf of 22 other State Farm policyholders

likewise denied insurance benefits following Katrina.   For these *Shows* plaintiffs, enough

investigation and discovery has been obtained to demonstrate that a RICO Act conspiracy and

enterprise led by State Farm damaged them.

 Also, approximately 206 individual cases substantially similar to this case are being filed

1

today against State Farm and other entities. The investigation and discovery related to the plaintiffs herein and other individual plaintiffs filing today has not proceeded far enough for them at this time to be able to meet the rigorous requirements for pleading a RICO Act complaint, as set out in the Federal Rules of Civil Procedure and the local rules of this Court.

However, on information and well-founded belief, the plaintiffs herein allege that State Farm operated and directed not only the RICO Act enterprise which harmed the *Shows* plaintiffs, but in fact operated and directed numerous such enterprises with various engineering and adjusting firms for the same corrupt purpose as the RICO Act enterprise described in *Shows,* and that at least one of these enterprises caused harm to plaintiffs herein, and the other individual plaintiffs filing today.

These plaintiffs believe and allege that if they are allowed to conduct coordinated discovery together with the other individual plaintiffs filing today, they will discovery enough specific facts to be able to then file amended complaints alleging RICO counts with requisite factual specificity, re-grouping these plaintiffs according to similar fact patterns and according to which State Farm RICO enterprise damaged them.

Consolidating these cases through discovery and pretrial proceedings would promote the ends of justice, is allowable under FRCP 42, and makes practical sense.

## I.
## PARTIES

1.    At all times material herein, Plaintiffs were adult resident citizens of Hancock County, Mississippi, who owned property located at 1220 Taranto Street, Waveland, MS 39576.

2.    Defendant State Farm Fire and Casualty Company is a corporation organized and

existing under the laws of the State of Illinois, with its principal office and place of business located at One State Farm Plaza, Bloomington, Illinois, 71701-0001, and which may be served with process by service on its agent for service of process, Mr. William E. Penna, 1080 River Oaks Drive, Suite B-100, Flowood, Mississippi 39232-7644 or on the Mississippi Insurance Commissioner, P.O. Box 79, Jackson, Mississippi, 39205-0079, pursuant to Miss. Code Ann. §83-21-1.

3.      Defendant State Farm Mutual Automobile Insurance Company is a corporation organized and existing under the laws of the State of Illinois, with its principal office and place of business located at One State Farm Plaza, Bloomington, Illinois, 71701-0001, and which may be served with process by service on its agent for service of process, Mr. William E. Penna, 1080 River Oaks Drive, Suite B-100, Flowood, Mississippi 39232-7644 or on the Mississippi Insurance Commissioner, P.O. Box 79, Jackson, Mississippi, 39205-0079, pursuant to Miss. Code Ann. §83-21-1.

4.      Defendants John Does 1-10 are entities affiliated with Defendants and/or have acted in concert with Defendants and whose identities are currently unknown, including *inter alia* engineering companies, adjusting companies, contractors, insurance agents, and individuals employed by these entities. All allegations and claims asserted herein against Defendants are incorporated herein by reference against John Does 1-10. Said John Does, when their identities are known, will be identified by name and joined in this action, if necessary, pursuant to the Federal Rules of Civil Procedure.

**II.**
**SUBJECT MATTER AND PERSONAL JURISDICTION**

5.     This Court has jurisdiction over the subject matter and Defendants in this case pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between Plaintiffs and Defendants and the amount in controversy exceeds $75,000.00.

**III.**
**VENUE**

6.     Venue in this cause is proper in this Court pursuant to 28 U.S.C. § 1391, because this suit respects real and personal property which is completely within the district of the United States District Court for Southern District of Mississippi.  This suit also respects conduct, acts and/or omissions of the Defendants which occurred completely within the United States District Court for the Southern District of Mississippi, Southern Division.

**IV.**
**FACTS**

7.     Plaintiffs purchased from State Farm a standard "Homeowner's Policy" ("subject policy"), naming them as the insureds.  The subject policy insured Plaintiffs': Dwelling and Dwelling Extension; Personal Property; and loss of use for actual loss sustained.  The subject policy was in effect on August 29, 2005.  A representative copy of the subject policy is attached hereto as Exhibit "A."

8.     The State Farm policy expressly states on its cover: "Homeowners Policy This is one of the broadest forms available today and provides you with outstanding value for your insurance dollars."  State Farm knew that Plaintiffs, like many other residents on the Mississippi Gulf Coast, purchased the policy for protection from accidental direct physical loss from

4

hurricanes.

9.     The subject policy provides "all risk" coverage for all "accidental direct physical loss" to Plaintiffs' "Dwelling" and "Dwelling Extension" unless the proximate and efficient cause of the loss is one that is expressly excluded by the policy, stating as follows:

**SECTION I-LOSSES INSURED**

**COVERAGE A - DWELLING**

We insure for accidental direct physical loss to the property described in Coverage A, except as provided in SECTION I - LOSSES NOT INSURED.

10.    This broad "all risk" coverage includes coverage for loss proximately and efficiently caused by hurricane wind, including coverage for damage caused by *objects* driven by the hurricane wind as well as water borne objects, material, or debris.

11.    The subject policy also provides coverage for "accidental direct physical loss" to Plaintiffs' "Personal Property" proximately and efficiently caused by hurricane wind, stating as follows:

**COVERAGE B - PERSONAL PROPERTY**

We insure for accidental direct physical loss to property described in Coverage B caused by the following perils, except as provided in **SECTION I - LOSSES NOT INSURED**:

**2.    Windstorm or hail**. This peril does not include loss to property contained in a building caused by rain, snow, sleet, sand or dust. This limitation does not apply when the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

12.    In the late 1990's, State Farm informed the Plaintiffs that a mandatory

5

modification of the policy raising the deductible for hurricane-caused losses was being imposed. State Farm subjected Plaintiffs and other policyholders to more risk of loss from hurricanes through the "Hurricane Deductible Endorsement" ("Hurricane Deductible"), or, in the alternative, charged them an increased premium to ensure insurance coverage for any and all damage to their insured dwelling and other property caused by a hurricane.

13.    During the time Plaintiffs' policy was in effect, State Farm requested and received premium rate increases and/or retained risk (deductible) increases for Plaintiffs' policy from the Mississippi Department of Insurance.   Said increases were justified by State Farm by the hurricane risks associated with Coastal properties.   Defendant utilized hurricane-specific experience ratings and computer model projections of hurricane losses to corroborate its demands for such rate increases.

14.    For such coverage, Plaintiffs agreed and paid State Farm an annual premium. Plaintiffs also agreed to pay a deductible to ensure insurance coverage for any and all damage to the insured residence caused by a hurricane, including all damage proximately and efficiently caused by hurricane wind.

15.    Plaintiffs, whose residence was near the Gulf of Mexico, purchased the subject policy from State Farm for one of the  primary purposes of insuring against any property damage that could proximately and efficiently result from hurricanes impacting the Mississippi Gulf Coast from the Gulf of Mexico.

16.    On August 29, 2005, within the subject policy period, the insured "Dwelling," "Dwelling Extension," and the "Personal Property" therein were damaged by Hurricane Katrina, a Category (4) Hurricane with wind gusts in excess of 140 miles per hour.  The area where the

insured property was located also sustained tornadoes, microbursts, mesocyclones, and other convective activity. These events caused an "accidental direct physical loss" covered under the subject policy.

17.    The "accidental direct physical loss" sustained by Plaintiffs to the insured property was proximately and efficiently caused by hurricane wind, tornadoes, microbursts, mesocyclones, and/or convective activity and occurred in the absence and/or independent of water, thereby triggering full coverage for all Plaintiffs' hurricane losses.

18.    Hurricane Katrina's devastating and catastrophic hurricane winds, tornadoes, microbursts, and mesocyclones occurred 4-6 hours before the peak hurricane storm surge, and destroyed Plaintiffs' property prior to the arrival of storm surge from Hurricane Katrina.

19.    Almost immediately thereafter, and in accordance with the subject policy provisions, Plaintiffs notified State Farm of their "accidental direct physical loss" and performed all obligations imposed on them by the policy.

20.    However, State Farm failed to fairly, adequately, and sufficiently investigate and adjust Plaintiffs' "accidental direct physical loss" under the policy.

21.    Instead, State Farm, along and in coordination with its retained adjusting and engineering firms, including, but not limited to, E.A. Renfroe, HAAG Engineering Company, and Forensic Analysis and Engineering Corporation, embarked on a calculated course of conduct designed to deny the covered losses of the Plaintiffs and all its other policyholders on the Mississippi Gulf Coast who suffered loss from Hurricane Katrina.

22.    On September 13, 2005, State Farm promulgated a so-called "Wind Water Claim Handling Protocol" for Katrina claims like Plaintiffs' on the Mississippi Gulf Coast. In this

7

document, State Farm directed its claims personnel and adjusters that "Where wind acts concurrently with flooding to cause damage to the insured property, coverage only exists under flood coverage, if available."

23.    In adjusting Plaintiffs' "accidental direct physical loss," State Farm failed to make any adequate good faith determination and/or distinction of which part of the loss was proximately and effectively caused by "water" or which damages were proximately and effectively caused by wind, objects driven by the wind, and/or wind borne or water borne objects, material or debris.  State Farm also failed to unconditionally tender to Plaintiffs the amount of damage that it could not prove by a preponderance of the evidence was caused by hurricane water.    In essence, State Farm improperly shifted the burden of proving coverage for the "accidental direct physical loss" to Plaintiffs.

24.    State Farm, based on its inadequate claims investigation and adjustment that was speculative, inadequate, and inconclusive as to how much of Plaintiffs' "accidental direct physical loss" was caused by "water," if any, hurricane wind, wind borne or water borne objects, material or debris, denied Plaintiffs' claims for hurricane damage and failed to pay Plaintiffs for the amount of their loss that it could not prove by a preponderance of evidence was caused by hurricane "water."  In denying Plaintiffs' claim, State Farm cited the policy's "flood" exclusion and the "anti-concurrent cause clause," which states as follows:

> 2.    We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events.  We do not insure for such loss regardless of:  (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or

occurs as a result of any combination of these:

    c.    **Water Damage**, meaning:
        (1)    flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, all whether driven by wind or not;

25.    State Farm denied Plaintiffs' total loss even though it failed as a matter of fact and Mississippi law to (1) sufficiently investigate the loss; (2) carry its affirmative burden of establishing by a preponderance of the evidence at the time of the denial that the proximate and efficient cause of Plaintiffs' loss was proximately and effectively caused by "Water Damage" as defined and limited in the exclusion; (3) carry its affirmative burden of establishing by a preponderance of the evidence at the time of the denial the amount of Plaintiffs' loss caused by water and the amount caused by wind and wind borne or water borne objects, material or debris; or (4) pay Plaintiffs for the amount of their loss that it could not prove by a preponderance of the evidence was caused by "water." As a result of State Farm's failures, Mississippi law precludes reliance on the anti-concurrent causation exclusion or the "water damage" exclusion and raises a duty to pay Plaintiffs for the entire loss. State Farm's failure to pay Plaintiffs all insurance proceeds promptly upon completion of its alleged investigation is without legitimate or arguable reason in fact or law.

26.    In denying Plaintiffs' claim, State Farm improperly relied on a scientifically erroneous generic engineering report from Tim Marshall and HAAG Engineering Company which erroneously concluded that all of the damage to insured property on the Mississippi Gulf Coast, including that of Plaintiffs, was caused by water. State Farm instructed and expected all of its adjusters, including E.A. Renfroe, and engineers to utilize the HAAG Report in adjusting

and denying claims for Katrina damage under the State Farm policy.  HAAG, at State Farm's direction, even conducted seminars in which it trained State Farm and E.A. Renfroe adjusters on how to adjust and deny claims under the subject policy's "water damage" and "anti-concurrent cause" provisions.

27.     E-mails obtained from Forensic indicate that State Farm uniformly pressured and coerced its retained engineering firms, through threats of non-payment and withholding of future business, to:  (1) conclude that all of the damage sustained by Plaintiffs and other State Farm policyholders was caused by water; and (2) change any report that concluded the cause of the loss was wind.

28.     State Farm's improper burden shifting and failure to satisfy its burden of proving an excluded cause in Plaintiffs' case was part of a concerted course of conduct by State Farm to deny and/or underpay Katrina damage claims in order to force the Plaintiffs and other State Farm policyholders to initiate years of protracted litigation just to recover the insurance payments that should have been paid to them unconditionally during the claims process and prior to denial. This business plan of purposefully denying all claims regardless of the merits in order to save money was first proposed to State Farm by its consulting company McKenzie and Company in the early 1990s.  Since then, State Farm has adopted and implemented this fraudulent claims strategy in the handling of claims brought under both its Auto and Property Insurance lines with unprecedented success and savings.

29.     State Farm's investigation, adjustment, and denial of Plaintiffs' claim were negligent, grossly negligent, and reckless.  State Farm's denial of coverage for Plaintiffs' total loss breached the subject contract of insurance.  Such conduct also constitutes bad faith and

tortious breach of contract and breach of the duty of good faith and fair dealing. State Farm has forced its customers to litigate in order to receive benefits that should have been paid immediately under the subject policy.

30. On May 24, 2006, in *Tuepker v. State Farm*, the United States District Court for the Southern District of Mississippi ruled that the same "anti-concurrent cause clause" utilized by State Farm to deny Plaintiffs' claims was ambiguous and unenforceable to damage proximately and efficiently caused by hurricane wind.

31. After this ruling, upon information and belief State Farm started adjusting and paying the few remaining "open" claims for hurricane damage in accordance with the Court's rulings and without using the "anti-concurrent cause clause." However, State Farm refused to reopen or readjust Plaintiffs' claim or the vast majority of other claims it had denied and "closed."

## V.
## COUNT ONE
### NEGLIGENCE/GROSS NEGLIGENCE/RECKLESS DISREGARD FOR RIGHTS OF PLAINTIFFS

32. Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in the foregoing Paragraphs of the Complaint.

33. State Farm had a duty under Mississippi law to fully, fairly, adequately and correctly investigate and adjust Plaintiffs' claims for hurricane damage.

34. State Farm breached this duty by failing to adequately investigate and adjust Plaintiffs' "accidental direct physical loss" in the following ways:

35. State Farm breached its duty by denying Plaintiffs' claim without meeting its affirmative burden of proving at the time of the denial by a preponderance of the evidence that

11

Plaintiffs' loss was proximately and efficiently caused by "water damage," a peril excluded by the policy.

36.     State Farm breached its duty by denying Plaintiffs' claim without meeting its affirmative burden of establishing at the time of the denial by a preponderance of the evidence, which amount of Plaintiffs' loss was caused by "water" and which amount was caused by wind and wind borne or water borne objects, material or debris.

37.     Similarly, State Farm breached its duty by failing to pay Plaintiffs for the damage it could not prove by a preponderance of the evidence was caused by "water."

38.     State Farm breached its duty by shifting to Plaintiffs the burden of proving that their loss was not excluded by the policy.

39.     State Farm breached its duty by dispatching an adjuster to investigate, adjust, and deny Plaintiffs' loss who did not have the qualifications or training to determine the cause of Plaintiffs' loss.

40.     State Farm breached its duty by failing to properly train its adjuster on how to investigate and adjust Plaintiffs' loss.

41.     State Farm breached its duty by basing its denial of Plaintiffs' claims for hurricane damage on the investigation and adjustment of an unqualified adjuster.

42.     State Farm breached its duty by failing to adequately inspect, investigate or adjust the insured property prior to denying the claim.

43.     State Farm breached its duty by denying Plaintiffs' total loss without conducting a complete, full, fair, and adequate investigation and adjustment of Plaintiffs' claim for damage under the policy.

12

44.     State Farm breached its duty by failing to credit the statements from eyewitnesses in investigating and adjusting Plaintiffs' claim.

45.     State Farm breached its duty by failing to utilize an objective meteorologist or structural engineer to determine the cause of Plaintiffs' loss prior to denying the claim.

46.     State Farm breached its duty by pressuring and coercing its retained engineering firms to conclude that water caused all of the loss to Plaintiffs' insured property and that of all other State Farm policyholders on the Mississippi Gulf Coast.

47.     State Farm breached its duty by relying on unreliable meteorological data from HAAG Engineering and others and by mischaracterizing, perverting, and ignoring valid meteorological data and eyewitness accounts in denying the claim.

48.     State Farm breached its duty by denying Plaintiffs' claims without knowing what caused the loss or undertaking any effort to find out.

49.     State Farm breached its duty by failing to pay Plaintiffs for their loss.

50.     State Farm breached its duty by arbitrarily denying Plaintiffs' loss based on the "anti-concurrent cause clause."

51.     State Farm breached its duty by failing to reopen or readjust Plaintiffs' claims for hurricane damage after the Court's invalidation of the "anti-concurrent cause clause."

52.     Such conduct as alleged above constitutes negligence, gross negligence, and/or reckless disregard for Plaintiffs' rights as a State Farm insured.

53.     State Farm's negligent, grossly negligent, and/or reckless adjustment proximately caused Plaintiffs' economic and other damages.

## COUNT TWO
### BREACH OF CONTRACT AGAINST STATE FARM

54.     Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in all foregoing Paragraphs of the Complaint.

55.     Plaintiffs entered into an insurance contract with State Farm in which they contracted for, purchased, and were entitled to receive full insurance coverage under the subject policy for all "accidental direct physical loss" or "collapse" to the insured Dwelling and other structures and additional living expense.  Plaintiffs similarly contracted for insurance coverage for all "accidental direct physical loss" to the personal contents proximately and efficiently caused by hurricane wind.

56.     Plaintiffs suffered an "accidental direct physical loss" under the subject policy.

57.     Hurricane Katrina is considered to be a windstorm under the subject policy.

58.     The overwhelming meteorological and physical evidence at the site of the insured property, surrounding area, and eyewitnesses established that insured property was proximately and efficiently destroyed by hurricane wind, tornadoes, microbursts, mesocyclone activity in the absence of and prior to the arrival and inundation of any storm surge.

59.     Plaintiffs satisfied their obligations under the subject policy by submitting a claim showing that they sustained an "accidental direct physical loss" as a result of Hurricane Katrina, a windstorm.   However, State Farm breached the subject policy by unjustifiably denying insurance coverage for Plaintiffs' loss in the following ways:

60.     State Farm breached the subject policy by denying Plaintiffs' claim without meeting its affirmative burden of proving at the time of the denial by a preponderance of the

evidence that Plaintiffs' "accidental direct physical loss" was proximately and efficiently caused by "water damage," a peril excluded by the policy.

61.     State Farm breached the subject policy by denying Plaintiffs' claim without meeting its affirmative burden of establishing at the time of the denial by a preponderance of the evidence, which amount of Plaintiffs' loss was caused by "water" and which amount was caused by wind and wind borne or water borne objects, material or debris.

62.     Similarly, State Farm breached the subject policy by failing to pay Plaintiffs for the damage it could not prove by a preponderance of the evidence was caused by "water."

63.     State Farm breached the subject policy by shifting to Plaintiffs the burden of proving that their loss was not excluded by the policy.

64.     State Farm breached the subject policy by denying Plaintiffs' claims for hurricane damage without being able to meet its burden of proving by a preponderance of the evidence that Plaintiffs' loss was not caused by a covered hurricane wind, tornado, microburst, mesocyclone, or other convective activity.

65.     State Farm breached the subject policy by failing to conclusively and objectively determine the proximate and efficient cause of the loss prior to its denial of Plaintiffs' claims for hurricane damage.

66.     State Farm breached the subject policy by denying Plaintiffs' claims for hurricane damage without being able to conclusively and objectively determine the proximate and efficient cause of the loss.

67.     State Farm breached the subject policy by intentionally relying on unreliable meteorological data from HAAG Engineering and others and by mischaracterizing, perverting,

15

and ignoring valid meteorological data and eyewitness accounts in denying the claim.

68.     State Farm breached the subject policy by denying Plaintiffs' claims for hurricane damage despite the overwhelming evidence from the insured property, surrounding area, and eyewitnesses that the loss was caused by hurricane wind, tornadoes, microbursts, and/or mesocyclones.

69.     State Farm breached the subject policy by unjustifiably denying insurance coverage for Plaintiffs' loss based on the "anti-concurrent cause clause" to the "water damage" exclusion.

70.     Similarly, State Farm breached the subject policy by denying Plaintiffs' insured loss in accordance with its post-Katrina corporate policy of denying all claims where hurricane wind acted "concurrently" with hurricane water, which is the category State Farm considered the Plaintiffs' loss to fall under.

71.     State Farm breached the subject policy by continuing to deny and failing to reopen or readjust Plaintiffs' claims for hurricane damage after the Federal Court invalidated its "anti-concurrent cause clause" and ruled it ambiguous and unenforceable.

72.     State Farm breached the subject policy by unfairly treating and adjusting Plaintiffs' claims for hurricane damage differently than the few other similar claims for hurricane damage that it did provide coverage for and pay under the subject policy.

73.     State Farm breached the subject policy by negligently, grossly negligently, and/or recklessly failing to conduct an adequate, proper, honest, and good faith inspection, adjustment and investigation of Plaintiffs' loss prior to denying such loss.

74.     State Farm breached the subject policy by denying Plaintiffs' claims for hurricane

16

damage without conducting an adequate, proper, honest, and good faith adjustment, inspection and investigation of Plaintiffs' loss.

75.     State Farm breached the subject policy by basing its denial of Plaintiffs' loss on an inadequate investigation, inspection, and adjustment of Plaintiffs' loss.

76.     State Farm breached the subject policy by basing its denial of Plaintiffs' claims for hurricane damage on the investigation, inspection, and adjustment of an adjuster who was unqualified to determine the proximate cause of the loss.

77.     State Farm breached the subject policy by failing to utilize an objective meteorologist or engineer to determine the proximate cause of the loss prior to denying Plaintiffs' claims for hurricane damage.

78.     State Farm breached the subject policy by pressuring and coercing its retained engineering firms to uniformly conclude that water caused all of the loss to Plaintiffs' insured property and that of all other State Farm policyholders on the Mississippi Gulf Coast.

79.     State Farm breached the subject policy by failing to construe the policy in favor of coverage for Plaintiffs' loss.

80.     State Farm breached the subject policy by predetermining, in conjunction with other property insurers, shortly before Hurricane Katrina made landfall that it would not cover the hurricane damage to insured properties on the Mississippi Gulf Coast, including damage incurred by Plaintiffs, caused by Hurricane Katrina.

81.     State Farm's breaches of contract have proximately caused Plaintiffs' economic and other damages.

## COUNT THREE
### BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING AGAINST STATE FARM

82.    Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in all foregoing Paragraphs of the Complaint.

83.    State Farm breached its duty of good faith and fair dealing to Plaintiffs by unjustifiably denying the insurance coverage for Plaintiffs' insured loss through the following ways:

84.    State Farm breached its duty of good faith and fair dealing by denying Plaintiffs' claim without meeting its affirmative burden of proving at the time of the denial by a preponderance of the evidence that Plaintiffs' "accidental direct physical loss" was proximately and efficiently caused by "water damage," a peril excluded by the policy.

85.    State Farm breached its duty of good faith and fair dealing by denying Plaintiffs' claim without meeting its affirmative burden of establishing at the time of the denial by a preponderance of the evidence which amount of Plaintiffs' loss was caused by "water" and which amount was caused by wind and wind borne or water borne objects, material or debris.

86.    Similarly, State Farm breached its duty of good faith and fair dealing by failing to pay Plaintiffs for the damage it could not prove by a preponderance of the evidence was caused by "water."

87.    State Farm breached its duty of good faith and fair dealing by shifting to Plaintiffs the burden of proving that their loss was not excluded by the policy.

88.    State Farm breached its duty of good faith and fair dealing by denying Plaintiffs' claims for hurricane damages without being able to meet its burden of proving by a

preponderance of the evidence that Plaintiffs' loss was not caused by a covered hurricane wind, tornado, microburst, mesocyclone, or other convective activity.

89.     State Farm breached its duty of good faith and fair dealing by failing to conclusively and objectively determine the proximate and efficient cause of the loss prior to its denial of Plaintiffs' claims for hurricane damage.

90.     State Farm breached its duty of good faith and fair dealing by denying Plaintiffs' claims for hurricane damage without being able to conclusively and objectively determine the proximate and efficient cause of the loss.

91.     State Farm breached the subject policy by intentionally relying on unreliable meteorological data from HAAG Engineering and others and by mischaracterizing, perverting, and ignoring valid meteorological data and eyewitness accounts in denying the claim.

92.     State Farm breached its duty of good faith and fair dealing by denying Plaintiffs' claims for hurricane damage despite the overwhelming evidence from the insured property, surrounding area, and eyewitnesses that the loss was caused by hurricane wind, tornadoes, microbursts, and/or mesocyclones.

93.     State Farm breached its duty of good faith and fair dealing by unjustifiably denying insurance coverage for Plaintiffs' loss based on the "anti-concurrent cause clause" to the "water damage" exclusion.  Similarly, State Farm breached its duty of good faith and fair dealing by denying Plaintiffs' insured loss in accordance with its post-Katrina corporate policy of denying all claims where hurricane wind acted "concurrently" with hurricane water, which is the category State Farm considered the Plaintiffs' loss to fall under.

94.     State Farm breached its duty of good faith and fair dealing by continuing to deny

19

and failing to reopen or readjust Plaintiffs' claims for hurricane damage after the Federal Court invalidated its "anti-concurrent cause clause" and ruled it ambiguous and unenforceable.

95.    State Farm breached its duty of good faith and fair dealing by unfairly treating and adjusting Plaintiffs' claims for hurricane damage differently than the few other similar claims for hurricane damage that it did provide coverage for and pay under the subject policy.

96.    State Farm breached its duty of good faith and fair dealing by negligently, gross negligently, and/or recklessly failing to conduct an adequate, proper, honest, and good faith inspection, adjustment, and investigation of Plaintiffs' claims for hurricane damage prior to denying such claims.

97.    State Farm breached its duty of good faith and fair dealing by denying Plaintiffs' claims for hurricane damage without conducting an adequate, proper, honest, and good faith inspection, adjustment, and investigation of Plaintiffs' claims for hurricane damage under the policy.

98.    State Farm breached its duty of good faith and fair dealing by basing its denial of Plaintiffs' claim for hurricane damage on an inadequate investigation, inspection, and adjustment of Plaintiffs' loss.

99.    State Farm breached its duty of good faith and fair dealing by basing its denial of Plaintiffs' claims for hurricane damage on the investigation, inspection, and adjustment of an adjuster who was unqualified to determine the proximate cause of the loss.

100.    State Farm breached its duty of good faith and fair dealing by failing to utilize an objective meteorologist or engineer to determine the proximate cause of the loss prior to denying Plaintiffs' claims for hurricane damage.

101.    State Farm breached its duty of good faith and fair dealing by pressuring and coercing its retained engineering firms to uniformly conclude that water caused all of the loss to Plaintiffs' insured property and that of all other State Farm policyholders on the Mississippi Gulf Coast.

102.    State Farm breached its duty of good faith and fair dealing by failing to construe the policy in favor of coverage for Plaintiffs' loss.

103.    State Farm breached its duty of good faith and fair dealing by predetermining, in conjunction with other property insurers, shortly before Hurricane Katrina made landfall that it would not cover the hurricane damage to insured properties on the Mississippi Gulf Coast, including damage incurred by Plaintiffs, caused by Hurricane Katrina.

104.    Such conduct by State Farm violates the standards of decency, fairness, and reasonableness.

105.    State Farm's breaches of its duty of good faith and fair dealing have proximately caused Plaintiffs' economic and emotional damages.

## COUNT FOUR
### BAD FAITH AND TORTIOUS BREACH OF CONTRACT

106.    Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in all foregoing Paragraphs of the Complaint.

107.    State Farm tortiously, maliciously, and in bad faith breached the subject policy by refusing to provide full insurance coverage under the subject policy for Plaintiffs' "accidental direct physical loss" without a legitimate or arguable reason in fact or law in the following ways:

108.    State Farm tortiously, maliciously, and in bad faith without a legitimate or

arguable reason breached the subject policy by denying Plaintiffs' claim without meeting its affirmative burden of proving at the time of the denial by a preponderance of the evidence that Plaintiffs' "accidental direct physical loss" was proximately and efficiently caused by "water damage," a peril excluded by the policy.

109.   State Farm tortiously, maliciously, and in bad faith without a legitimate or arguable reason breached the subject policy by denying Plaintiffs' claim without meeting its affirmative burden of establishing at the time of the denial by a preponderance of the evidence which amount of Plaintiffs' loss was caused by "water" and which amount was caused by wind and wind borne or water borne objects, material or debris.

110.   Similarly, State Farm tortiously, maliciously, and in bad faith without a legitimate or arguable reason breached the subject policy by failing to pay Plaintiffs for the damage it could not prove by a preponderance of the evidence was caused by "water."

111.   State Farm tortiously, maliciously, and in bad faith without a legitimate or arguable reason breached the subject policy by shifting to Plaintiffs the burden of proving that their loss was not excluded by the policy.

112.   State Farm's improper burden shifting and failure to satisfy its burden of proving an excluded cause in Plaintiffs' case was part of a concerted course of conduct by State Farm to deny and/or underpay Katrina damage claims in order to force the Plaintiffs and other State Farm policyholders to initiate years of protracted litigation just to recover the insurance payments that should have been paid to them unconditionally during the claims process and prior to denial. This business plan of purposefully denying all claims regardless of the merits in order to save money was first proposed to State Farm by its consulting company McKenzie and Company in

the early 1990s. Since then, State Farm has adopted and implemented this fraudulent claims strategy in the handling of claims brought under both its Auto and Property Insurance lines with unprecedented success and savings. State Farm is now the most profitable insurance company in the United States.

113.    State Farm tortiously, maliciously, and in bad faith without a legitimate or arguable reason breached the subject policy by denying Plaintiffs' claims for hurricane damages without being able to meet its burden of proving by a preponderance of the evidence that Plaintiffs' loss was not caused by a covered hurricane wind, tornado, microburst, mesocyclone, or other convective activity.

114.    State Farm tortiously, maliciously, and in bad faith without a legitimate or arguable reason breached the subject policy by failing to conclusively and objectively determine the proximate and efficient cause of the loss prior to its denial of Plaintiffs' claims for hurricane damage.

115.    State Farm tortiously, maliciously, and in bad faith without a legitimate or arguable reason breached the subject policy by denying Plaintiffs' claims for hurricane damage without being able to conclusively and objectively determine the proximate and efficient cause of the loss.

116.    State Farm tortiously, maliciously, and in bad faith without a legitimate or arguable reason breached the subject policy by intentionally relying on unreliable meteorological data from HAAG Engineering and others and by mischaracterizing, perverting, and ignoring valid meteorological data and eyewitness accounts in denying the claim.

117.    State Farm tortiously, maliciously, and in bad faith without a legitimate or

arguable reason breached the subject policy by denying Plaintiffs' claims for hurricane damage despite the overwhelming evidence from the insured property, surrounding area, and eyewitnesses that the loss was caused by hurricane wind, tornadoes, microbursts, and/or mesocyclones.

118.    State Farm tortiously, maliciously, and in bad faith without a legitimate or arguable reason breached the subject policy by unjustifiably denying insurance coverage for Plaintiffs' loss based on the "anti-concurrent cause clause" to the "water damage" exclusion. Similarly, State Farm tortiously, maliciously, and in bad faith without a legitimate or arguable reason breached the subject policy by denying Plaintiffs' insured loss in accordance with its post-Katrina corporate policy of denying all claims where hurricane wind acted "concurrently" with hurricane water, which is the category State Farm considered the Plaintiffs' loss to fall under.

119.    State Farm tortiously, maliciously, and in bad faith without a legitimate or arguable reason breached the subject policy by continuing to deny and failing to reopen or readjust Plaintiffs' claims for hurricane damage after the Federal Court invalidated its "anti-concurrent cause clause" and ruled it ambiguous and unenforceable.

120.    State Farm tortiously, maliciously, and in bad faith without a legitimate or arguable reason breached the subject policy by unfairly treating and adjusting Plaintiffs' claims for hurricane damage differently than the few other similar claims for hurricane damage that it did provide coverage for and pay under the subject policy.

121.    State Farm tortiously, maliciously, and in bad faith without a legitimate or arguable reason breached the subject policy by negligently, gross negligently, and/or recklessly failing to conduct an adequate, proper, honest, and good faith inspection, adjustment, and

investigation of Plaintiffs' claims for hurricane damage prior to denying such claims.

122.    State Farm tortiously, maliciously, and in bad faith without a legitimate or arguable reason breached the subject policy by denying Plaintiffs' claims for hurricane damage without conducting an adequate, proper, honest, and good faith inspection, adjustment, and investigation of Plaintiffs' claims for hurricane damage under the policy.

123.    State Farm tortiously, maliciously, and in bad faith without a legitimate or arguable reason breached the subject policy by basing its denial of Plaintiffs' claim for hurricane damage on an inadequate investigation, inspection, and adjustment of Plaintiffs' loss.

124.    State Farm tortiously, maliciously, and in bad faith without a legitimate or arguable reason breached the subject policy by basing its denial of Plaintiffs' claims for hurricane damage on the inspection, investigation, and adjustment of an adjuster who was unqualified to determine the proximate cause of the loss.

125.    State Farm tortiously, maliciously, and in bad faith without a legitimate or arguable reason breached the subject policy by failing to utilize an objective meteorologist or engineer to determine the proximate cause of the loss prior to denying Plaintiffs' claims for hurricane damage.

126.    State Farm tortiously, maliciously, and in bad faith without a legitimate or arguable reason breached the subject policy by pressuring and coercing its retained engineering firms to uniformly conclude that water caused all of the loss to Plaintiffs' insured property and that of all other State Farm policyholders on the Mississippi Gulf Coast.

127.    State Farm tortiously, maliciously, and in bad faith without a legitimate or arguable reason breached the subject policy by failing to construe the policy in favor of coverage

for Plaintiffs' total loss.

128.    State Farm tortiously, maliciously, and in bad faith without a legitimate or arguable reason breached the subject policy by predetermining, in conjunction with other property insurers, shortly before Hurricane Katrina made landfall that it would not cover the hurricane damage to insured properties on the Mississippi Gulf Coast, including damage incurred by Plaintiffs caused by Hurricane Katrina.

129.    State Farm's tortious, malicious, and bad faith conduct towards Plaintiffs as alleged above was grounded in and consistent with State Farm policies, procedures, and a general corporate course of conduct in handling all damage claims in catastrophes like Hurricane Katrina.

130.    State Farm's tortious, malicious, and bad faith breaches of contract have proximately caused Plaintiffs' economic and emotional damages.

131.    State Farm's acts and conduct as alleged above were willful, wanton, malicious, grossly negligent, and done with reckless disregard for the rights of Plaintiffs, thereby arising to the level of an independent tort and entitling Plaintiffs to an award of Punitive Damages.

## COUNT FIVE
### WAIVER & ESTOPPEL

132.    Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in all foregoing Paragraphs of the Complaint.

133.    State Farm had the obligation and duty to establish what, if any, part of the total loss fell under the terms of its exclusion.  By declaring its burden of proof irrelevant and intentionally abandoning its burden of establishing what, if any, part of the loss was excluded and thereby shifting its burden of proof to Plaintiffs, State Farm waived its right to exclude any part

of the loss.

134.    State Farm's conduct and denial constitutes a waiver of its right to now inspect the insured property; reinvestigate the cause of loss, or utilize engineering and/or meteorologist to do what should have been done prior to the denial.  State Farm therefore waived its right to make any causal determination of the loss now that the matter is in litigation, and should be estopped from being able to conduct any kind of post-denial investigation, inspection of the insured property, or utilizing different litigation experts to now determine the cause of the loss and "clean up" its bad faith conduct.  State Farm should further be estopped from using litigation experts to now determine the cause of loss and justify its invalid denial.

## COUNT SIX
### FRAUDULENT CLAIMS PRACTICES

135.    Plaintiffs hereby adopt and incorporate by reference each and every allegation set forth in all foregoing Paragraphs of the Complaint.

136.    The massive number of State Farm insured homes destroyed by Hurricane Katrina left State Farm facing huge losses after Katrina.  To reduce its financial exposure, State Farm then conceived and instituted a fraudulent course of claims practices to be applied to Katrina "slab" claims and other damage claims, including that of Plaintiffs.

137.    The claim of Plaintiffs for their Hurricane Katrina damages was wrongfully denied pursuant to State Farm's scheme of fraudulent and deceptive claims practices.

138.    State Farm, in effect re-wrote its contract and its claims procedures for "slab" cases destroyed by wind and water and embarked on an intentional course of pre-litigation and post-litigation conduct fraudulently concealed from Plaintiffs and deliberately designed to deny

27

Plaintiffs' legitimate claims under their State Farm contract and Mississippi law.

139.    The actions of State Farm constitute a deliberate course of company-wide fraudulent post-Katrina claims handling practices by which State Farm intentionally undertook to defraud the Plaintiffs.

140.    Said actions by Defendants constitute fraud, fraudulent concealment, and fraudulent inducement, as well as bad faith claims handling on an institutional basis in the handling by State Farm of Katrina damage claims.  The actions by the Defendants were intended to, and did, result in the intentional and fraudulent denial of the claims of the Plaintiffs whose home was destroyed by the Hurricane.

141.    The actions of State Farm were undertaken with willful and deliberate disregard of the rights of the Plaintiffs.  The actions of State Farm warrant the imposition of extra-contractual and punitive damages under Mississippi law and the United States Constitution.

### COUNT SEVEN
#### AIDING AND ABETTING; CIVIL CONSPIRACY

142.    Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in all foregoing Paragraphs of the Complaint.

143.    Defendants aided and abetted Defendant State Farm in its wrongful and fraudulent denial of Plaintiffs' insurance claim.  Defendants had knowledge of State Farm's tortious, wrongful and fraudulent claims handling activities that affected the adjustment of Plaintiffs' claim and all other State Farm policyholders on the Mississippi Gulf Coast, and yet gave substantial assistance to such conduct.

144.    Moreover, Defendants had knowledge of State Farm's tortious, wrongful and

fraudulent denial of Plaintiffs' claims for hurricane damage under the subject policy, and yet gave substantial assistance to State Farm in such conduct.

145.    Defendants also acted in concert with Defendant State Farm in its scheme to wrongfully and fraudulently deny insurance benefits to Plaintiffs.    Defendant State Farm developed a pretextual basis for claim denial, relying in whole or part on actions of Defendants.

146.    Defendants knew that their actions were aiding and abetting State Farm in its efforts to develop pretextual grounds for claim denial.

147.    Defendants conduct and actions in this regard substantially assisted and encouraged Defendant State Farm in its fraudulent denial of Plaintiffs' insurance claim.  Through such conduct, Defendants acted in concert with Defendant State Farm in their common plan to obscure the true cause of the loss suffered by Plaintiffs.

148.    Defendants further substantially assisted, acted in concert pursuant to a common plan, and acted a joint and concurrent tortfeaser in Defendant State Farm's fraudulent denial of Plaintiffs' insurance claim.

149.    The above actions of all Defendants, and each of them, were in furtherance of a civil conspiracy to deny legitimate insurance claims, including Plaintiffs' claim, without legitimate or arguable reason in fact or law.  Such actions violate not only the duty of good faith and fair dealing, but were so grossly negligent and committed in reckless disregard of the rights of Plaintiffs that they violate Mississippi statutory law and constitute negligence *per se*.

150.    The object of the conspiracy between Defendants and Defendant State Farm was to deny legitimate claims of coverage and was in violation of both the criminal statutes of the State of Mississippi and the positive duties placed on Defendants by Mississippi substantive law.

# VI.
# REMEDIES

151.    Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in all foregoing Paragraphs of the Complaint.

152.    As a direct and proximate result of State Farm's negligence, gross negligence, reckless disregard for Plaintiffs' rights as a State Farm insured, breach of contract, breach of duty of good faith and fair dealing, and bad faith and tortious breach of contract without a legitimate or arguable reason in fact or law, Plaintiffs are entitled to the following relief:

(A)    Payment for all contractual benefits for all coverages afforded to Plaintiffs under the subject State Farm policy for damage to their insured residence and personal contents caused by Hurricane Katrina, with interest on all amounts due Plaintiffs under their policy;

(B)    With respect to "Additional Living Expenses" benefits owing under the policy, Defendant should be ordered to immediately pay all such benefits retroactive to August 29, 2005, with interest on all past-due amounts, and pay such benefits prospectively to the limits of coverage or the insured is no longer entitled to them;

(C)    Prejudgment interest on the amounts owing to Plaintiffs in contractual or policy benefits with interest, retroactive to August 29, 2005;

(D)    Compensatory damages on the tort claims for mental distress, emotional harm, and other losses and damages suffered by Plaintiffs as a proximate result on the denial of coverage.  Plaintiffs are entitled on their contract claims to consequential damages, including but not limited to the amounts Plaintiffs expended or lost in trying to

subsist without insurance benefits since August 29, 2005.  On all claims Plaintiffs are entitled to recovery for humiliation, stigmatization in the Plaintiffs' communities, embarrassment, and mental distress proximately caused by State Farm's bad faith denial of their claim;

(E)     For the intentionally tortious actions of State Farm, compensatory damages as described above, and as further provided under Mississippi law, Plaintiffs are entitled to recovery of their attorney fees and costs of litigation for such intentional acts committed by State Farm;

(F)     Extra-contractual damages for State Farm's tortious, malicious, willful, wanton, reckless, grossly negligent, and bad faith conduct, which arose to the level of an independent tort, including but not limited to, compensatory damages for all out-of-pocket expenses incurred by reason of State Farm's refusal to pay contractual benefits, mental distress and/or emotional harm caused or contributed to by Defendants' bad faith refusal to honor its contract of insurance, and recovery of attorney fees and litigation expenses incurred by Plaintiffs by reason of Defendants' denial of insurance coverage, including mental distress, all out-of-pocket expenses and attorney fees and expenses incurred by Plaintiffs;

(G)     Punitive and exemplary damages for Defendants' tortious, malicious, willful, wanton, reckless, grossly negligent, and bad faith conduct which arose to the level of an independent tort, including but not limited to, an award of punitive damages sufficient to punish and deter Defendants, make an example of the Defendants to discourage other insurers from engaging in such misconduct, taking into account

31

Defendants' financial condition, all in an amount sufficient to achieve the public purposes underlying an award of punitive damages as may be determined by the Court and/or jury; prejudgment interest on all amounts in contractual benefits and compensatory damages awarded by the Court and/or jury; and all costs of the litigation, including but not limited to reasonable attorney fees, incurred in prosecuting this action and any subsidiary or auxiliary actions that arise in determining the losses of the individual Plaintiffs by reason of the non-payment of contractual benefits, in an amount to be determined by the Court following conclusion of all proceedings herein; and

(H)   An Order estopping Defendants from now inspecting the insured property or determining the cause of loss based on its denial and post-denial conduct.

153.   Plaintiffs respectfully request such further general or specific relief to which they are entitled to at law or in equity.

154.   Plaintiffs respectfully request a trial by jury on all issues so triable.

Respectfully submitted this 20th day of June, 2007.

> JAMES A. VARNELL  and
> MICHELLE  VARNELL
> PLAINTIFFS

By:   _Derek A. Wyatt_
DEREK A. WYATT (MS BAR #7413)

Of Counsel:

Richard F. Scruggs
Sidney A. Backstrom
David Zachary Scruggs
THE SCRUGGS LAW FIRM, P.A.
P.O. Box 1136

120-A Courthouse Square
Oxford, MS 38655
Phone: (662) 281-1212

Don Barrett
Marshall Smith
BARRETT LAW OFFICE
404 Court Square North
P.O. Box 987
Lexington, MS 39095
Phone: (662) 834-2376

Mary E. McAlister
Derek A. Wyatt
NUTT & MCALISTER, P.L.L.C.
605 Crescent Blvd., Suite 200
Ridgeland, MS 39157
Phone: (662) 898-7302

Dewitt M. Lovelace
LOVELACE LAWFIRM, P.A.
36474 Emerald Coast Pkwy., Suite 4202
Destin, FL  32541
Phone: (850) 837-6020

***ATTORNEYS FOR PLAINTIFFS***